**SARMIENTO, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendants.**

No. 10–CV–1209 (ILG).

United States District Court, E.D. New York.

Aug. 31, 2011.

Carlton M. Smith, Cardozo School of Law Tax Clinic, New York, NY, for Plaintiffs.

Karen Elizabeth Wozniak, U.S. Department of Justice, Washington, DC, for Defendants.

*MEMORANDUM AND ORDER*

GLASSER, Senior District Judge:

Before this Court is the defendants' motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, For the following reasons, that motion is granted in part and denied in part.

### BACKGROUND FACTS

German A. Sarmiento and his wife Aura M. Montoya ("plaintiffs") commenced this action against the United States Internal Revenue Service ("IRS," "defendant" or "Government") under § 28 U.S.C. § 1346 seeking to recover the sum of $1,932 withheld by the IRS to which they claim to be entitled.[1] (Compl. at ¶¶ 24, 27, 30.) Plaintiffs married in 1996 and are still married. (*Id.* at ¶ 7.) Together they have a minor child under the age of seventeen. (*Id.* at ¶ 1.)

Liability for unpaid taxes, penalties plus interest that accrued over the years during which they filed separately and jointly was sought to be resolved. Towards that end, in May of 2007, the plaintiffs sought to compromise their tax liabilities by an Offer–in–Compromise ("OIC") agreement pursuant to § 26 U.S.C. 7122.[2] The IRS accepted the OIC submitted by each on November 14, 2007. (Compl. at ¶¶ 8, 9; Ex. C at 2.) Section V(f) of those agreements provides, in part, that:

> The IRS will keep all payments and credits made, received or applied to the total original liability before submission of this offer.... As additional consideration beyond the amount of my/our offer, *the IRS will keep any refund*, including interest, due to me/us *because of*

*overpayment of any tax or other liability, for tax periods extending through the calendar year in which the IRS accepts the offer.* The date of acceptance is the date on the written notice of acceptance issued by the IRS to me/us or to my/our representative.

(*Id.* at ¶ 11.) (emphases added).

Plaintiffs timely filed a joint Form 1040 income tax return for the 2007 tax year for which they claim they owed no taxes. (*Id.* at ¶ 13.) That return reflected a tax liability of $2,663 and an "additional child tax credit" of $864 pursuant to 26 U.S.C, § 24(d) and an earned income credit of $2,831 pursuant to 26 U.S.C. § 32. Plaintiffs seek a refund of $1,032—the difference between $2,663 and $3,695, the sum of the two credits. Plaintiffs additionally claim an economic stimulus rebate ("ESR") of $900 pursuant to the Economic Stimulus Act of 2008 ("ESA"), discussed below.[3] (*Id.* at ¶ 15.)

Rather than issuing the Sarmientos a check for $1,932, the sum of the credits and ESR, the IRS kept it contending that the $1,932 is an "overpayment" for the 2007 tax year which it is entitled to keep pursuant to the terms of the two OICs. (*Id.* at ¶¶ 4, 6, 16.) The plaintiffs claim that the $1,932 is not an "overpayment" within the meaning of the OIC, and was erroneously withheld. (*Id.* at ¶¶ 32, 33.) This suit is to recover both the $1,032 "overpayment" for the 2007 tax year and the $900 ESR, in addition to any relevant

---

1. Under § 28 U.S.C. § 1346(a)(1) and § 1346(a)(2), this Court has jurisdiction over any civil action against the United States for the recovery of any internal-revenue tax alleged "erroneously or illegally assessed or collected" or upon any express contract with the United States not exceeding $10,000.

2. The IRS has the authority to compromise the collection of tax liabilities. 26 U.S.C. § 7122. An OIC is a contract between a

taxpayer and the IRS in which the latter agrees to accept an amount less than what the taxpayer owes.

3. Pursuant to § 6428(b)(1)(a), Mr. and Mrs. Sarmiento are together entitled to $600 under the "qualifying income" provision. Pursuant to § 6428(b)(1)(B), plaintiffs are also entitled to an additional $300 credit under the "qualifying child" provision.

interest, damages and costs. (*Id.* at ¶¶ 26, 29, 33, 34, 36–38.)

## DISCUSSION

### I. Standard of Review

A complaint should be dismissed which does not allege facts sufficient to make the asserted claim plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task." *Id.* at 1950. For purposes of a motion to dismiss, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the light most favorable to the plaintiff. *Arar v. Ashcroft,* 585 F.3d 559, 567 (2d Cir. 2009).

### II. Contract Principles

■■■ An OIC is a contract between the taxpayer and the IRS. *Maniolos v. United States,* 741 F.Supp.2d 555, 565–66 (S.D.N.Y.2010). It "has long been settled that an agreement compromising unpaid taxes is a contract and, consequently, that it is governed by the rules applicable to contracts generally." *United States v. Lane,* 303 F.2d 1, 4 (5th Cir.1962). Contracts with the Government are governed by federal common law. *Up State Fed. Credit Union v. Walker,* 198 F.3d 372, 375 fn. 4 (2d Cir.1999). In developing federal common law, federal courts often look to state law. *Barnes v. Am. Int'l Life Assurance Co.,* 681 F.Supp.2d 513, 520 (S.D.N.Y.

2010). "When it comes to general rules of contract interpretation, there is little difference between federal common law and New York law." *Id.* "Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.' Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,* 136 F.3d 82, 86 (2d Cir.1998) (citations omitted). Where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence. *Feifer v. Prudential Ins. Co.,* 306 F.3d 1202, 1210 (2d Cir.2002). A court may dismiss a breach of contract claim on a Rule 12(b)(6) motion, where a contract's language is clear and unambiguous and dictates that result. *Maniolos,* 741 F.Supp.2d at 566–67. However, where the language of a contract is ambiguous, its construction presents a question of fact, which precludes summary dismissal. *Id.*

### III. Child Tax Credit & Earned Income Credit

The plaintiffs 2007 joint tax return reported a total tax liability of $2,663. This liability was offset by an additional child tax credit given to the plaintiffs of $864 pursuant to 26 U.S.C. § 24(d) and earned income credit of $2,831 pursuant to 26 U.S.C. § 32. The sum of these two credits exceeds the 2007 tax liability by $1,032. The excess is an "overpayment" under § 6401 [4] to which, all other things being equal, the Sarmientos would be entitled as a refund pursuant to section 6402(a).[5] *See*

---

4. Section 6401 sets forth the amounts treated as overpayments. § 6401(a) states that the term overpayment "includes that part of the amount of the payment of any internal revenue tax which is assessed or collected ..."

5. An "overpayment" occurs when a refundable credit exceeds a tax liability, the excess is considered an "overpayment" of tax under § 6401(b). § 6401(b) provides that if "the amount allowable as credits under subpart C

*In Re Molina,* 2009 WL 1587292 at *3 fn. 4 (Bkrtcy.N.D.Ohio May 29, 2009).

█ Here, however, the OIC agreement precludes that answer in terms that are unambiguous. The agreement provides that the "IRS will keep any *refund,* including interest, due to me/us because of *overpayment* of any tax or other liability, for *tax periods* extending through the calendar year in which the IRS accepts the offer." (emphases added) (Compl. at ¶ 11.) Without making a fortress out of the dictionary, the return of the sum of an "overpayment" of tax liability is not refundable to the tax payer. The OIC explicitly permits the IRS to retain it as consideration of foregoing by compromise the larger sum due for unpaid taxes which it might otherwise have enforced. If that were the entirety of the dispute, the determination of the matter would be foreclosed. The dispute, however, is centered on the portion of the OIC which permits the Government, as additional consideration for compromising the collection of the full amount of tax due, to keep any refund due to the tax payer because of an "overpayment" of the tax due for the calendar year in which the IRS accepts the OIC. The IRS accepted the offer on November 14, 2007. In plain terms, the IRS is entitled to keep the refund the taxpayer might otherwise claim for an "overpayment" made in the 2007 tax year. The Government's motion to dismiss claims related to the $1,032 in "overpayment" pursuant to 26 U.S.C. § 24(d) and 26 U.S.C. § 32 is granted.

## IV. *Economic Stimulus Act of 2008*

On February 13, 2008, President Bush signed the ESA. The purpose of the ESA was "to put cash into the hands of lower-and middle-income families so that by spending it, they would stimulate the United States economy." *In re Wooldridge,* 393 B.R. 721, 726 (Bankr.D.Idaho 2008). Economic Stimulus Act of 2008, Pub. L. No. 110–185, 122 Stat. 613, 613 (2008) (codified as amended in scattered subsections of 26 U.S.C.). The ESA broadly provides that any "qualified individual" shall receive an ESR equal to that taxpayer's net income tax liability, but no more than $600 for a single person or $1,200 for a married couple filing a joint return and no less than $300 for a single person and $600 in the case of a joint return. 26 U.S.C.A § 6428(a). For every "qualifying child," filers are also entitled to an additional $300. § 6428(b)(1)(B). Individuals with no net tax liability are eligible to receive a stimulus payment, provided they had minimum qualifying income of $3,000. § 6428(b)(2).

Both the Government and the plaintiffs claim that they are entitled to keep the ESR. The parties' dispute centers on whether the ESA treats the ESR as an (advance) refund or credit against the 2008 tax liability, as the plaintiffs argue; or rather as the IRS argues, as a refund or credit (or here an overpayment) for the 2007 tax year to which the Government is entitled to keep. The question of whether the ESR should be regarded as a credit or refund for the 2007 tax year or rather an advance refund against the 2008 taxable year "is a difficult one" with "arguments supporting both sides." *In Re Schwinn,* 400 B.R. 295, 302 (Bankr.D.Kan.2009).

The relevant provisions as to which year the ESR implicates are as follows:

Subsection 6428(a) provides:

---

of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A ... the amount of such excess shall be considered an overpayment."

Section 6402(a) provides that in a case of an "overpayment" the IRS may "credit the amount" against "any liability" by reducing the overpayment against the tax liability.

"In general.—In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2008 . . . ."

Subsection (f), entitled "Coordination with advance refunds of credit" provides:

(1) In general.—The amount of credit which would (but for this paragraph) be allowable under this section shall be reduced (but not below zero) by the aggregate refunds and credits made or allowed to the taxpayer under subsection (g).

Subsection (g), entitled "Advance refunds and credits" provides:

(1) In general.—Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.

(2) Advance refund amount.—For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.

To facilitate the distribution of the ESR, subsection 6428(g)(3) directs that any refund or credit should be made "as rapidly as possible" and that no refund or credit would be made after December 31, 2008.

The IRS argues that based on section 6428(g)(1), which speaks of the "first taxable year beginning in 2007," it is entitled to keep the ESR because the ESA unequivocally ties the ESR to the 2007 tax liability. *In re Alguire*, 391 B.R. 252, 254 (Bankr.W.D.N.Y.2008); *accord In re Lacy*, 2008 WL 4000176 (Bankr.S.D.Ind. Aug. 28, 2008); *accord Maniolos v. United States*, 741 F.Supp.2d 555, 566–67 (S.D.N.Y.2010). Under this view, the ESA "creates the fiction, that the Debtors overpaid their 2007 taxes in the amount of the ESR, based on information contained within their 2007 tax return" which here becomes an "overpayment" for the 2007 tax year to which the IRS is entitled to keep pursuant to the OIC. *In re Smith*, 393 B.R. 205 (Bankr.S.D.Ind.2008).

■ The plaintiffs contend, and the Court agrees, that § 6428(g) instead provides the mechanism for making an advance payment or refund and credit for the 2008 tax year as required by § 6428(a). To that end, § 6428(g) provides that the IRS is to look to the 2007 tax year as a template for calculating the amount of the rebate due to the majority of taxpayers. *Wooldridge*, 393 B.R. 721, 726 (Bankr.D.Idaho 2008). In other words, the tax return for the 2007 taxable year is relevant to the extent it helps the IRS determine the size of a taxpayers rebate, advance refund and credit for the 2008 tax year. This interpretation is confirmed by the heading of subsection 6428(g) entitled "Advance refunds and credits" as it is with the title of § 6428, which speaks of "2008 recovery rebates for individuals." This reading, as opposed to the one advanced by the Government, is more consistent with the purpose and language of the ESA. One "of the surest indexes of a mature and developed jurisprudence [is] . . . to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737 (2d Cir.1945). Here, the purpose of the ESA is clear—to stimulate the economy through rebates from the period of February 13, 2008 until December 31, 2008. It is only in this context that the opening of § 6428, which

provides generally that any eligible individual "shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2008" becomes clear.

 However, even if the ESA relates to the 2007 year, plaintiffs claim as to the ESR can withstand the Government motion to dismiss on contractual grounds. The plaintiffs could not have signed away a right to a legal or equitable interest in the rebate before that right existed unless it was within their contemplation or intent. "The Debtors may have had, at most, a 'hope' that Congress would enact legislation authorizing a stimulus payment to boost the United States' economy, but there was no assurance that Congress would authorize such payments or that the Debtors would qualify for them if they were authorized." *In re Andrews*, 386 B.R. 871, 874 (Bkrtcy.D.Utah 2008). Section V(f) of the OIC does not indicate whether the parties intended to forfeit all payments, including the unforeseeable, from the Government. Rather, it only states that "the IRS will keep any refund" because "of [an] overpayment of any tax or other liability" for the 2007 tax year. In this context, the terms of the OIC become ambiguous to an event not within the contemplation of the parties—the passing of the ESA.[6] *See Hopkins v. Commissioner*, 120 T.C. 451, 460 (2003). The IRS's concern that a holding "that an OIC must be construed to freeze the calculation of overpayments under the version of the code in existence on the date of acceptance of the OIC ... would increase the administrative burdens of the IRS" is unfounded because the IRS could have easily stipulated that

any future changes in the code are to also be included in the agreement. (Dkt. No. 7 at 11.) The Government's motion to dismiss plaintiffs claims related to the $900 ESR is denied.

In sum, the plaintiffs' claim to the sum of $1,032 is denied. Their claim to the sum of $900 is granted.

SO ORDERED.

---

6.  One court observed that it "is relatively rare in the history of the United States that Congress has enacted a law which provides for a payment to taxpayers, as an economic stimulus, which is not related to a refund of taxes paid with respect to liabilities for tax established by the Internal Revenue Code." *In re Thompson*, 396 B.R. 5, 9 (Bkrtcy.N.D.Ind. 2008).