11-3752(L)
Sarmiento v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: March 7, 2012                                          Decided: May 2, 2012)

Docket Nos. 11-3752 (L), 11-4495 (XAP)

_____

GERMAN A. SARMIENTO AND AURA M. MONTOYA,

*Plaintiffs-Appellants-Cross-Appellees*,

—v.—                                                          11-3752 (Lead)
                                                              11-4495 (XAP)

UNITED STATES OF AMERICA,

*Defendant-Appellee-Cross-Appellant*.[*]

_____

Before :

KATZMANN, PARKER, and WESLEY, *Circuit Judges*.

_____

Appeal from Memorandum and Order of the United States District Court for the Eastern District of New York (Glasser, *J.*) granting in part and denying in part the motion of Defendant-Appellee the United States to dismiss the Complaint for failure to state a claim. Plaintiffs-Appellants German Sarmiento and Aura Montoya contend that the United States Internal Revenue Service ("IRS") wrongfully withheld tax refunds to which plaintiffs were entitled as the result of the IRS's misinterpretation of contractual language in Offer-in-Compromise ("OIC") agreements that plaintiffs entered into with the IRS in 2007. Specifically, plaintiffs argue that a provision in the OIC agreements stating that plaintiffs agree to forfeit to the IRS "any refund . . . due to [them] because of overpayment of any tax" for the 2007 tax year does not apply to tax

_____

[*] The Clerk of the Court is directed to amend the caption as noted.

refunds resulting from plaintiffs' receipt of an Earned Income Tax Credit, an Additional Child Tax Credit, or a "recovery rebate" under the Economic Stimulus Act of 2008, I.R.C. § 6428 (2008), because they are not "refunds" resulting from an "overpayment" of taxes, as those terms are commonly understood outside of the tax context.

We hold that, when used in IRS standard form documents, specialized tax terms such as "refund" and "overpayment" are interpreted in light of the Internal Revenue Code. Further, we hold that tax refunds made pursuant to the Economic Stimulus Act of 2008 relate to the 2007 tax year, and so those refunds fall with the OIC agreements' temporal limitation. Finally, we hold that plaintiffs' agreement to forfeit their interest in "any" tax refund for the 2007 tax year encompasses anticipated as well as unanticipated tax refunds. Based on these holdings, we conclude that the IRS correctly withheld the tax refunds at issue in this action from plaintiffs under the express terms of the OIC agreements.

Accordingly, for the reasons stated below, the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.

———————

CARLTON M. SMITH, Director, Benjamin N. Cardozo School of Law Tax Clinic, New York, N.Y., *for Plaintiffs-Appellants*.

DAMON W. TAAFFE, Attorney (Jonathan S. Cohen, Attorney, Tamara W. Ashford, Deputy Assistant Attorney General, *on the brief*), Tax Division, U.S. Department of Justice, *for Defendant-Appellee*[**]

———————

KATZMANN, *Circuit Judge*:

In this case, we are called on, in principal part, to determine whether specialized tax terms in an Offer-in-Compromise ("OIC") agreement derive their meaning from the Internal Revenue Code or from ordinary "plain English." Plaintiffs-Appellants German Sarmiento and Aura Montoya ("plaintiffs") filed this action seeking to recover tax refunds that Defendant-Appellee the United States withheld from them pursuant to OIC agreements they each entered

———————

[**] This appeal was heard by the Court in tandem with a related but not formally consolidated action, *Maniolos v. United States*, No. 10-4933-cv, which we resolve by a separate summary order filed simultaneously with this Opinion. Counsel of record for the United States in the *Maniolos* action, Jaime Leeser Nawaday, Assistant United States Attorney for the Southern District of New York, argued both cases on behalf of the United States in the consolidated oral argument.

into with the United States Internal Revenue Service ("IRS") in 2007. Under the OIC program, authorized under § 7122(a) of the Internal Revenue Code (or the "Code"), the IRS may agree to compromise delinquent taxpayers' unpaid tax liabilities in exchange for the payment of a fixed sum, as well as certain "additional consideration." I.R.C. § 7122(a); Treas. Reg. § 301.7122-1(e). As is provided in the OIC standard form, IRS Form 656, this "additional consideration" includes "any refund, including interest, due to [the taxpayer] because of overpayment of any tax or other liability, for tax periods extending through the calendar year in which the IRS accepts the offer." Compl. ¶ 11 (quoting IRS Form 656 (2007)). Pursuant to the "additional consideration" provision in the OIC agreement, the IRS withheld payment of certain tax refunds to which plaintiffs were otherwise entitled. Specifically, the IRS withheld: (1) a payment under the Economic Stimulus Act of 2008 ("ESA"), Pub. L. No. 110-185, 122 Stat. 613 (Feb. 13, 2008) (codified at I.R.C. § 6428), and (2) a tax refund for the 2007 tax year based on plaintiffs' entitlement to an Earned Income Tax Credit ("EITC") under I.R.C. § 32 and an Additional Child Tax Credit ("ACTC") under I.R.C. § 24(d).

Plaintiffs filed a Complaint in the United States District Court for the Eastern District of New York (Glasser, *J.*) seeking to recover the tax refunds from the United States. *See* 28 U.S.C. § 1346(a)(1) (granting federal courts jurisdiction over civil actions against the United States for recovery of wrongfully collected internal revenue taxes). The United States moved to dismiss the Complaint, and, by Memorandum and Order dated August 31, 2011, the district court granted the motion in part and denied the motion in part. In particular, the district court held that plaintiffs were not entitled to a tax refund for the 2007 tax year resulting from the EITC and ACTC tax credits, but were entitled to the stimulus payment under the ESA. *See Sarmiento v. United States*, 812 F. Supp. 2d 137, 141-42 (E.D.N.Y. 2011).

3

For the reasons described below, we conclude that plaintiffs are not entitled to any of the withheld tax refunds they seek in this action. Specifically, we hold: (a) that all the payments withheld by the IRS constitute tax "refund[s]" under the OIC agreements' "additional consideration" provision, (b) that tax refunds made pursuant to the ESA apply to the 2007 tax year, and (c) that, by entering into OIC agreements, plaintiffs contracted away their right to "any refund" to which they were otherwise entitled for the 2007 tax year, including ESA payments. Accordingly, we affirm the district court's Order in part, reverse the district court's Order in part, and remand the case for further proceedings consistent with this Opinion.

**BACKGROUND**

The following facts are drawn from the allegations in plaintiffs' Complaint, together with those "documents . . . incorporated in it by reference" and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

Sarmiento and Montoya have been married "since before 1996" and live with their minor child. Compl. ¶ 7; J.A. 22. Both Sarmiento and Montoya work as independent contractors -- Sarmiento as a taxi driver and Montoya as a cleaner of commercial office space -- and were for many years unaware of their obligation to make estimated Medicare and Social Security tax payments on their self-employment income. Accordingly, by 2007, Sarmiento and Montoya jointly owed the United States more than $30,000 in unpaid tax liabilities pertaining to the 1996, 1997, 1999, 2000, 2001, 2003, and 2004 tax years.

The Internal Revenue Code authorizes the government to "compromise any civil . . . case arising under the internal revenue laws." I.R.C. § 7122(a). Accordingly, a taxpayer with

4

outstanding tax liabilities may offer to settle and discharge those liabilities by paying part of what she owes to the IRS. *See id.* § 7122(c)-(f) (establishing the process by which a taxpayer may offer to compromise her outstanding tax liabilities, as well as the standards by which the IRS evaluates such offers). The IRS provides a standard form -- Form 656 -- with which a taxpayer may make an "Offer-in-Compromise" to the IRS. *See* Compl. ¶ 11. Form 656 includes a number of conditions that the taxpayer must certify that she has read, understands, and agrees to. *See* J.A. 48. Among these conditions is the taxpayer's agreement that:

> As additional consideration beyond the amount of my/our offer, the IRS will keep any refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax periods extending through the calendar year in which the IRS accepts the offer.

Compl. ¶ 11; *see also, e.g.*, J.A. 48 (requiring the offering taxpayer to agree to be a compliant taxpayer for the following five years).

On November 14, 2007, Sarmiento and Montoya entered into separate OIC agreements with the IRS wherein they agreed to pay a total of $2,000 -- $1,000 each -- to compromise their approximately $30,000 in outstanding tax liabilities. The letters from the IRS accepting plaintiffs' offers each reiterated that "the conditions of the offer include the provision that as additional consideration for the offer, we will retain any refunds or credits that you may be entitled to receive for 2007 or for earlier tax years," including "refunds you receive in 2008 for any overpayments you made toward tax year 2007 or toward earlier tax years." J.A. 45, 52. Sarmiento and Montoya both completed their $1,000 payments to the IRS in 2008. *Id.* at 59-60.

Meanwhile, on February 13, 2008, Congress enacted the Economic Stimulus Act of 2008, Section 101 of which granted "2008 recovery rebates for individuals" in the form of tax credits. *See* Pub. L. No. 110-185 (codified at I.R.C. § 6428). Specifically, subsections (a) and

5

(b) of ESA § 101 grants eligible individuals a tax credit for the 2008 tax year in an "amount equal to the lesser of -- (1) net income tax liability, or (2) $600," with a minimum rebate of $300. I.R.C. § 6428(a)-(b). Further, in order to distribute this tax credit as soon as possible, subsection (g) of ESA § 101 allows taxpayers to receive an "advance refund" of their 2008 tax credit. *Id.* § 6428(g). Subsection (g), entitled "Advance refunds and credits," states:

> **(1) In general.**—Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed . . . for such first taxable year in an amount equal to the advance refund amount for such taxable year.

> **(2) Advance refund amount.**—For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.

*Id.* To the extent a taxpayer is eligible for an "advance refund" pursuant to subsection (g), subsection (f) provides that the otherwise applicable 2008 tax credit "shall be reduced (but not below zero)" by that amount. *Id.* § 6428(f). To facilitate the rapid distribution of the stimulus payments, subsection (g)(3) directs that any refund or credit should be made "as rapidly as possible" and that no refund or credit will be made after December 31, 2008. *Id.* § 6428(g)(3).

In early 2008, Sarmiento and Montoya filed a joint tax return for the 2007 tax year by means of an IRS standard Form 1040, in which they reported no income tax liability and self-employment payroll taxes of $2663. In addition, they claimed two refundable credits: an EITC of $2831 and an ACTC of $864. Accordingly, Sarmiento and Montoya requested a 2007 tax year refund of $1032 -- the difference between the sum of their EITC and ACTC credits and their reported tax liability. In addition, because they each had "qualifying income" over $3000 and a dependent "qualifying child," Sarmiento and Montoya jointly claimed a $900 tax refund under the ESA. *See* I.R.C. § 6428(b)(1). The IRS concluded, however, that the $1932 in tax

6

refunds that plaintiffs requested constitute "additional consideration" under the terms of plaintiffs' OIC agreements with the IRS, and therefore withheld payment of those funds.[1]

On June 30, 2009, Sarmiento and Montoya filed an administrative claim with the IRS under I.R.C. § 7422 seeking to recover the withheld tax refunds. The IRS denied plaintiffs' claim by letter dated September 4, 2009. On March 17, 2010, Sarmiento and Montoya, with the assistance of the Benjamin N. Cardozo School of Law Tax Clinic, filed suit in the district court to recover the withheld tax refunds, plus interest and costs.

The United States moved to dismiss the Complaint. By Memorandum and Order dated August 31, 2011, the district court first granted the motion in part, holding that plaintiffs' 2007 tax year refund constitutes a "refund . . . due . . . because of overpayment" under the additional consideration provision of the parties' OIC agreements. *See Sarmiento*, 812 F. Supp. 2d at 141 (E.D.N.Y. 2011) (emphasis omitted). The district court also denied the motion in part, however, holding that the ESA payment did not relate to the 2007 tax year, and so did not fall within the additional consideration provision's temporal limitation. *Id.* at 142-43; *see also* Compl. ¶ 11 (noting that the additional consideration only relates to the "tax period[] extending through the calendar year in which the IRS accepts the offer"). Further, the district court held, in the alternative, that the ESA payment cannot fall within the OIC agreements' additional consideration provision because plaintiffs "could not have signed away a right to a legal or equitable interest in the [ESA payment] before that right existed unless it was within their contemplation or intent," which it was not. *Id.* at 143. Accordingly, the district court ordered

---

[1] The United States does not dispute on appeal that, absent the OIC agreements, plaintiffs would be entitled to the contested tax refunds.

7

the United States to pay plaintiffs $900, the amount it held they were entitled to under the ESA. *Id.* Both parties filed timely appeals of the district court's Memorandum and Order.

## DISCUSSION

We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

The principal issue on appeal is whether specialized tax terms used in an OIC agreement take their meaning from the Internal Revenue Code or are afforded their ordinary "plain English" meaning. As is relevant here, the terms "refund" and "overpayment" are terms of art in the tax context, with meanings under the Code that differ considerably from their ordinary dictionary meaning. Specifically, under the Code, the IRS is authorized to credit any "overpayment" that a taxpayer makes on her federal taxes against that taxpayer's liabilities, and "refund any balance" to the taxpayer. I.R.C. § 6402(a). Both the EITC and ACTC are classified in the Code as "refundable credits." I.R.C. §§ 24(d), 32, 6401(b)(1). However, taxpayers who are eligible for tax "refunds" based on EITC and ACTC tax credits do not actually "overpay" their income taxes, at least in the traditional sense of the word. Instead, the EITC and ACTC refundable tax credit programs are structured to create the legal fiction that recipients make "overpayments" on their taxes, thereby entitling them to the resulting tax "refunds," as a mechanism for achieving certain social policy goals. *See Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 864 (1986) ("The

8

earned-income credit was enacted to reduce the disincentive to work caused by the imposition of social security taxes on earned income . . . , to stimulate the economy . . . , and to provide relief for low-income families . . . ."). To achieve these ends by means of the tax system, the Code states that if a taxpayer is owed more in refundable credits than her tax liability (after first reducing that liability by other credits), the amount in excess "*shall be considered* an overpayment" and the taxpayer is eligible for a "refund" in an amount corresponding to that constructive overpayment. I.R.C. § 6401(b)(1) (emphasis added). Similarly, in order "[t]o provide economic stimulus through recovery rebates to individuals," Pub. L. No. 110-185, pmbl., the ESA credits eligible taxpayers with a constructive overpayment of their taxes, and deems the stimulus credit to be a refund of this constructive overpayment. *See* I.R.C. § 6428(g).

As plaintiffs acknowledge, the tax credits at issue in this action are rightly considered "overpayments" under the Code. *See* J.A. 33; *see also Sorenson*, 475 U.S. at 859 (holding that EITC payments may be intercepted by the Secretary of Treasury under § 6402(c), which authorizes the Secretary to intercept "overpayments" of taxes from taxpayers who fail to meet their child support obligations); *accord Israel v. United States*, 356 F.3d 221, 223 (2d Cir. 2004) ("[I]f [the EITC] were not an overpayment, it would not be refundable."). Plaintiffs argue, however, that terms used in OIC agreements should be afforded their "plain English" meaning rather than their meaning under the Code, because the agreements are "drafted in colloquial English" and "[h]ad the IRS desired to give special meanings to any terms it placed into the OICs, it was the IRS' duty to do so unequivocally." Pls.' Br. at 16. As none of the tax credits at issue in this action result from an actual overpayment by plaintiffs to the IRS that the IRS is refunding, adopting a "plain English" reading of the OIC agreements would mean that those credits do not constitute "refund[s] . . . due . . . because of overpayment" under the terms of the

9

additional consideration provision. *See Rucker v. Sec'y of Treasury*, 751 F.2d 351, 356 (10th Cir. 1984) ("A refund of federal taxes is a repayment of money paid by the taxpayer in excess of the taxpayer's liability. Although the earned income credit is given effect through the income tax return, the credit is not a tax refund because eligibility for the credit is not contingent upon payment of any federal income tax."), *abrogated by Sorenson*, 475 U.S. 851.

It is true that "[a]n OIC is a contract between a taxpayer and the IRS" and so OIC agreements are interpreted, under federal common law, using "[t]raditional rules of contract law." *Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005); *see also Robinette v. Comm'r*, 439 F.3d 455, 462 n.6 (8th Cir. 2006); *United States v. Lane*, 303 F.2d 1, 4 (5th Cir.1962) ("It has long been settled that an agreement compromising unpaid taxes is a contract and, consequently, that it is governed by the rules applicable to contracts generally."). But contractual language "must be considered from the viewpoint of one cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business," *Kerin v. U.S. Postal Serv.*, 116 F.3d 988, 992 n.2 (2d Cir. 1997) (internal quotation marks omitted), and this includes contracts with the United States regarding a party's federal tax obligations. *See United States v. Standard Rice Co.*, 323 U.S. 106, 109-10 (1944); *see also* 11 Williston on Contracts § 30:19 (4th ed. 2005) ("[C]ontractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law." (footnote omitted)).

Any reasonable contracting party would understand the IRS's standardized Form 656, which plaintiffs used to make their Offer-in-Compromise to the IRS, as a specialized tax document whose terms and conditions take their meaning from the Internal Revenue Code. As an initial matter, Form 656 makes numerous express references to the Code, for example to

10

I.R.C. § 7122(c), which outlines the payments that are required under an OIC agreement. *See* J.A. 48. Similarly, Form 656's statement that the IRS "ask[s] for the information on this form to carry out the internal revenue laws of the United States," *id.* at 50, makes clear to the taxpayer that the OIC process is a product of, and therefore ultimately governed by, the Code. *See* I.R.C. § 7122 (authorizing the IRS to "compromise any civil or criminal case arising under the internal revenue laws"; setting standards by which the IRS determines whether to accept an OIC; and providing the taxpayer with administrative review and appeal of an IRS decision not to accept an OIC). A reasonable taxpayer understands that when she enters into a contract with the IRS to compromise her outstanding tax liabilities in exchange for, in part, foregoing her interest in "any refund . . . due to me . . . because of overpayment" for the current tax year, she does so against the backdrop of the definitions given to those terms in the Code.

Further, while the IRS has intentionally sought to draft Form 656 in a colloquial manner, this is true of many IRS documents that are intended for the use of ordinary taxpayers while also using specialized tax terms whose meaning is indisputably taken from the Code. For example, the familiar IRS standard Form 1040, which the plaintiffs used to file their tax returns for the 2007 tax year, generally adopts colloquial language while still describing refundable credits such as the EITC and ACTC as "[p]ayments" that create a fictional amount that a taxpayer "overpaid" and can therefore have "refunded" to her. J.A. 75. Accordingly, a reasonable taxpayer using Form 1040 to file her taxes would understand the credits at issue in this action as creating constructive "overpayments" resulting in fictional "refunds" when they file their tax returns. Reasonable taxpayers would also understand that Form 1040's adoption of terms with specialized tax meanings carry over and apply to the IRS's use of the same terms in Form 656. In addition, we think the notion that specialized tax terms contained in an IRS standard form

11

contract do not take their meaning from the Code is in tension with the practical administration

of the tax laws. Adopting a "plain English" interpretation of the OIC agreements, as plaintiffs

urge, would have the undesirable effect of injecting unnecessary uncertainty into the judicial and

administrative interpretation of IRS standard forms.

For the foregoing reasons,[2] we conclude that the plaintiffs' 2007 tax refund, which

resulted from their entitlement to refundable tax credits under the EITC and ACTC programs, as

well as their joint stimulus payment under the ESA, both constitute "refund[s] . . . due . . .

because of overpayment" under the terms of their OIC agreements with the IRS.

Next, we turn to whether the ESA tax refunds fall within the OIC agreements' additional

consideration provision's temporal limitation to the "tax period[] extending through the calendar

year in which the IRS accepts the offer," J.A. 48, which in this case is the 2007 tax year.

---

[2] Plaintiffs also make a number of policy arguments in support of their reading of the OIC agreements. First, plaintiffs contend that the OIC agreement's additional consideration provision was "intended to stop the gaming of the IRS in computing revenue collection potential" that could be achieved if a taxpayer deliberately overpaid their taxes in the year she submits an OIC to the IRS, thus shielding that income from the IRS as it considers whether to accept the offer but ensuring a refund of the shielded funds. Pls.' Br. at 39-40. Plaintiffs cite no authority to support their assertion that the fear of such "gaming" motivated the IRS's inclusion of the additional consideration provision in its standard form OIC agreement. Moreover, this "gaming" rationale for the additional consideration provision is in tension with the plain language of the OIC agreement, which encompasses "any refund" due to a taxpayer because of overpayment, and is not textually restricted to address the hypothetical scenario posed by plaintiffs. Second, plaintiffs argue that defining "overpayment" and "refund" in accordance with the Code "defeats the fresh start" that the OIC program is designed to give delinquent taxpayers. *Id.* at 41. While it is true that one of the stated objectives of the OIC program is to "[p]rovide the taxpayer a fresh start toward future voluntary compliance with all filing and payment requirements," Internal Revenue Manual, § 5.8.1.1.4(1), the OIC program is equally motivated by the need to "[s]ecure collection of revenue," *id.*, a goal that is furthered by the interpretation of the OIC agreements that we adopt in this Opinion. Finally, plaintiffs contend that interpreting OIC agreements in accordance with the Code frustrates the social policy objectives that animated Congress to create the tax credits at issue in this action. As the Supreme Court has made clear, however, the social policy considerations underlying certain tax credits do not remove those credits from the ordinary operation of the tax laws. *See Sorenson*, 475 U.S. at 864-65 ("The ordering of competing social policies is a quintessentially legislative function.").

12

Subsections (a) and (b) of I.R.C. § 6428 provide certain tax credits to individuals "for the first taxable year beginning in 2008." I.R.C. § 6428(a)-(b). However, in order to provide an "advance refund" of the tax credit available under the ESA, subsection (g)(1) of I.R.C. § 6428 provides that "[e]ach individual who was an eligible individual for [tax year 2007] shall be treated as having made a payment against the tax . . . for [tax year 2007] in an amount equal to the advance refund amount for [tax year 2007]." *Id.* § 6428(g)(1). The "advance refund amount" is defined in subsection (g)(2) as "the amount that would have been allowed as a credit . . . for [tax year 2007] if this section (other than subsection (f) and this subsection) had applied to [tax year 2007]." *Id.* § 6428(g)(2). For taxpayers who are eligible for "advance refunds of credit," subsection (f) reduces the amount of those taxpayers' 2008 tax credit, available under subsections (a) and (b), "by the [amount of] the refunds and credits made or allowed to the taxpayer under subsection (g)." *Id.* § 6428(f).

While hardly a model of lucid statutory draftsmanship, we think the ESA is clear on its face with regard to which tax years the stimulus credits relate: the basic credit available under subsections (a) and (b) grants eligible taxpayers a refund applicable to the 2008 tax year, whereas the "advance refunds" available under subsection (g) grants eligible taxpayers a refund applicable to the 2007 tax year. As plaintiffs were eligible for an "advance refund" of their ESA tax credit under subsection (g), *see* Compl. ¶ 15, plaintiffs' ESA tax credit constituted a "refund" on their 2007 taxes. Accordingly, plaintiffs' ESA tax refund was within the temporal reach of the OIC agreements' additional consideration provision, which restricted the IRS's entitlement to withhold plaintiffs' tax refunds to those pertaining to the 2007 tax year.

The district court, by contrast, concluded that the advance refund available under I.R.C. § 6428(g)(1) is merely *measured* in reference to a taxpayer's 2007 tax liability, but does not

13

actually *apply to* the 2007 tax year. *See Sarmiento*, 812 F. Supp. 2d at 142 ("[Section] 6428(g) provides that the IRS is to look to the 2007 tax year as a template for calculating the amount of the rebate due . . . for the 2008 tax year."). We respectfully disagree. First of all, I.R.C. § 6428(g)(1) states that eligible taxpayers "*shall be treated* as having made a payment against" their 2007 tax year obligations "in an amount equal to the advance refund amount for [the 2007 tax year]." I.R.C. § 6428(g)(1) (emphasis added). This "shall be treated" language mirrors that of I.R.C. § 6401(b)(1), which provides that if refundable tax credits such as those available under the EITC program exceed the amount of a taxpayer's overall tax liability, that amount "*shall be considered* an overpayment." *Id.* § 6401(b)(1) (emphasis added). As the Supreme Court has held, considering EITC tax credits as "overpayments" means that they are treated as such in all areas of tax administration, even those that would seem to have no connection with the purpose of the EITC program. *See Sorenson*, 475 U.S. at 859-60. Accordingly, reading these two Code provisions in tandem, we conclude that I.R.C. § 6428(g)(1) is best interpreted as establishing the legal fiction that eligible taxpayers overpaid their 2007 taxes in an amount equal to the "advance refund" of their ESA stimulus credit, and not merely as a "mechanism for making an advance payment or refund and credit for the 2008 tax year." *Sarmiento*, 812 F. Supp. 2d at 142. Moreover, I.R.C. § 6428(g)(2) defines "the advance refund amount" as "the amount that *would have been allowed* as a credit . . . *if this section* (other than subsection (f) and this subsection) *had applied* to [tax year 2007]." I.R.C. § 6428(g)(2) (emphases added). This negative conditional phrasing seems to reflect a presumption on the part of Congress that the "advance refunds" available under subsections (f) and (g), in contrast to those available under subsections (a) and (b), do apply to the 2007 tax year.

Separately, plaintiffs note that the ESA was modeled on a similar statute, the Economic Growth and Tax Relief Reconciliation Act of 2001 (the "2001 Stimulus Act"), Pub. L. No. 107-16, 115 Stat. 42 (June 7, 2001) (formerly codified at I.R.C. § 6428), which provided eligible taxpayers a tax credit "for 2001," the year the statute was enacted, by means of an "advance refund" of constructively overpaid taxes. *See* Pub. L. No. 107-16, § 101(b)(1). In 2002, the 9th Circuit's Bankruptcy Appellate Panel held that the 2001 Stimulus Act's tax credit created a refund for the 2001 tax year, reasoning that the statute's "advance refund" was merely calculated by reference to the taxpayer's 2000 tax year obligations. *See In re Lambert*, 283 B.R. 16, 20-21 (B.A.P. 9th Cir. 2002) (ruling that the debtor's 2001 stimulus payment was not part of the bankruptcy estate where the debtor filed for bankruptcy in February 2001 -- before the 2001 Stimulus Act was passed and the check was issued, but after the 2000 tax year). Plaintiffs contend, and the United States does not dispute, that *Lambert* was the only reported case interpreting § 101(b)(1) of the 2001 Stimulus Act when Congress passed the ESA. Accordingly, plaintiffs argue that one can discern from *Lambert* what Congress intended when it enacted language in subsection (g) in the ESA that tracked similar language in §101(b) of the 2001 Stimulus Act. *See Cheshire v. Comm'r*, 282 F.3d 326, 332 n.15 (5th Cir. 2002) (congressional intent can be discerned by looking to judicial interpretations of similar statutory provisions).

Any tension between *Lambert* and the holding in the instant case, however, dissipates when one considers that the ESA and the 2001 Stimulus Act were enacted on different sides of the annual tax deadline. Notably, as the *Lambert* court reasoned, "[t]he refund [provided by the 2001 Stimulus Act] is 'advance' because, upon the Act's enactment, year-2001 taxes were not yet due." 283 B.R. at 20. In other words, because most taxpayers had already filed their taxes for the preceding year at the time that the 2001 Stimulus Act was enacted in June of 2001,

15

Congress would have been unlikely to characterize any additional tax credit for the 2000 tax year as an "advance" refund. The ESA, by contrast, was enacted in February of 2008, meaning that taxpayers could still receive an "advance refund" of their 2007 taxes while complying with the mid-April 2008 filing deadline for the 2007 tax year. This distinction in the timing of the two statutes in relation to the annual tax filing deadline renders it entirely consistent to interpret the same phrase -- "advance refunds" -- to mean one thing in the ESA and another in the 2001 Stimulus Act.[3] *See Maniolos v. United States*, 741 F. Supp. 2d 555, 564-65 (S.D.N.Y. 2010).

For the aforementioned reasons, we conclude that I.R.C. § 6428(g) grants taxpayers an "advance refund"of their taxes for the 2007 tax year, based on a constructive overpayment of taxpayers' 2007 tax year obligations. Accordingly, the ESA stimulus payment falls within the temporal limitation in plaintiffs' OIC agreements with the IRS, and we therefore reverse the district court's holding that plaintiffs are entitled to that payment.

Finally, we turn to the district court's alternative holding that plaintiffs are entitled to the ESA payment "even if the ESA relates to the 2007 year" because "plaintiffs could not have signed away a right to a legal or equitable interest in the rebate before that right existed unless it was within their contemplation or intent." *Sarmiento*, 812 F. Supp. 2d at 143. We disagree, and hold that ESA stimulus payments are contractually within the scope of plaintiffs' OIC agreements. It is well established that "where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002). The pertinent language of the parties' OIC agreements could not be clearer in expressing that "the IRS will keep *any refund* . . . due . . .

---

[3] In noting that it would not be inconsistent for the phrase "advance refund" to have a different meaning in the ESA than in the 2001 Stimulus Act, we assume without deciding that the *Lambert* court correctly interpreted the 2001 Stimulus Act.

because of overpayment of *any tax* or other liability" for tax year 2007. Compl. ¶ 11 (emphases added). By agreeing to this provision, plaintiffs expressly agreed to forfeit to the IRS "any" tax refunds to which they would otherwise be entitled for the 2007 tax year, even those not within their conscious contemplation or intent at the time of contracting. *Cf. Bell v. Cendant Corp.*, 293 F.3d 563, 568 (2d Cir. 2002) (noting that an agreement providing for arbitration of "any controversy" is "as broad an arbitration provision as one can imagine" as it is "inclusive, categorical, unconditional and unlimited" (internal brackets and quotation marks omitted)). Accordingly, we conclude that, in broadly contracting away their interest in "any" tax refund for the 2007 tax year, plaintiffs assumed the risk that they would become eligible for unanticipated tax credits for the 2007 tax year and thereby become contractually obligated to forfeit their entitlement thereto to the IRS.

## CONCLUSION

For the foregoing reasons, we hold that specialized tax terms in IRS standard forms take their meaning from the Internal Revenue Code, and that the tax refunds at issue in this action therefore constitute "refund[s] . . . due . . . because of overpayment" under the express terms of plaintiffs' OIC agreements with the IRS. In addition, we hold that advance tax refunds made pursuant to the ESA relate to the 2007 tax year, and that ESA stimulus payments fall within plaintiffs' broad agreement to waive their interest in "any" tax refund pertaining to the 2007 tax year. Based on these holdings, we conclude that plaintiffs have failed to state a claim against the United States for wrongful withholding of taxes.

We therefore **AFFIRM** the district court's Memorandum and Order insofar as the court granted the United States's motion to dismiss plaintiffs' Complaint, **REVERSE** the district

17

court's Memorandum and Order insofar as it denied the motion, and **REMAND** the case to the district court with instructions to enter judgment in favor of the United States.