Mbiya B. ISRAEL and Carrol Israel,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Docket No. 03–6112.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 19, 2003.

Decided: Jan. 22, 2004.

Diana L. Leyden, Esq., University of Connecticut School of Law Tax Clinic (Timothy Everett, on the brief), Hartford, CT, for Plaintiffs–Appellants.

Kenneth W. Rosenberg, Esq., Tax Division, Department of Justice (Eileen J. O'Connor, Assistant Attorney General, David English Carmack, Department of Justice, on the brief, Kevin J. O'Connor, United States Attorney, of counsel), Washington, D.C., for Defendant–Appellee.

Before: OAKES, POOLER, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge.

Mbiya and Carrol Israel ("the Israels") did not file tax returns for 1993, 1994, or 1995 until early in 2000. When they finally did file these returns, they sought to

take advantage of the earned income credit ("EIC") to produce refunds in excess of taxes they had paid. The Internal Revenue Service ("IRS") has taken a less than sympathetic view of the Israels' endeavor. It contends the refund claims are untimely. This dispute presents an interesting problem, as it is unclear how the Internal Revenue Code ("the Code") is to be applied here. The Code carefully and precisely tells us that the EIC is an overpayment of taxes for calculating the size and timing of a refund, but it fails to tell us when the amount thereby sought to be refunded was "paid." Identifying when the overpayment was paid is not an easy task, for while determining when taxpayer expenditures qualify for a tax credit is normally a matter of simple accounting, such is not the case here. The EIC is not a function of entries duly noted in a ledger—it is akin to a negative income tax. It is not a function of dollars spent but of qualifying events not necessarily tied to identified and receipted costs. Thus, this case requires us to determine just when amounts sought to be refunded by operation of the EIC are constructively "paid."

## I. Facts & Procedural Posture

The parties do not dispute the relevant facts. In February 2000, the Israels filed joint federal income tax returns for the tax years 1993, 1994, and 1995. Approximately $140 had been withheld from their income in 1993, but the Israels paid no tax in 1994 and 1995. With each return, the Israels included a Schedule EIC, seeking refunds by operation of the earned income credit.[1] The parties agree that if the Israels timely claimed the refunds, they are entitled to receive $317 for 1993, $233 for 1994, and $765 for 1995. The parties disagree, however, as to whether the Israels timely claimed the refunds.

Upon receipt of the Israels' returns, the IRS informed them their refund claims were denied as untimely. The Israels brought suit for a refund pursuant to 26 U.S.C. § 7422 in the United States District Court for the District of Connecticut. The Israels and the United States moved for summary judgment, agreeing that no genuine issues of material fact existed. The district court dismissed the complaint in an unreported decision, denying the Israels' motion and agreeing with the IRS that the Israels' claims were not timely. The district court rested its conclusion, in part, on the premise that § 6513(b) of the Code applies to the EIC. The court reasoned that under that section the Israels are deemed to have paid the amounts sought to be refunded by operation of the EIC on April 15 of the year following each tax year in question. As such, their payments are not refundable, pursuant to the three-year "look back" rule contained in § 6511(b)(2)(A) of the Code. The Israels appealed. For the reasons that follow, we now affirm.

## II. Discussion

This Court reviews a district court's summary judgment determination *de novo*. See *Ertman v. United States*, 165 F.3d 204, 206 (2d Cir.1999). The only issue before us is whether the Israels timely claimed a refund of amounts generated by the earned income credit for the tax years 1993, 1994, and 1995. In one respect, it is undisputed that the Israels timely filed their claims for the EIC. A taxpayer must file a "[c]laim for credit or refund of an

---

1. Taxpayers are eligible for the EIC so long as they satisfy the requirements of 26 U.S.C. § 32. These requirements include having at least one "eligible child" in the home and/or not exceeding a certain income level, the calculation of which is complex and not relevant to this opinion.

overpayment of any tax imposed by [the Code] ... within 3 years from the time the return was filed ...." 26 U.S.C. § 6511(a). The Israels filed their returns and their claims for the EIC at the same time. Thus, they filed those claims "within 3 years from the time the return[s were] filed." *Id.; see also Weisbart v. United States Dep't of Treasury*, 222 F.3d 93, 95–96 (2d Cir.2000).[2]

■ However, in another respect—the one at issue in this case—it is not as clear whether the Israels' claims were timely. The Code provides that, notwithstanding a timely filed claim, the amount of a tax refund "shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." § 6511(b)(2)(A). This "look back" rule thus precludes even a timely filed claim from seeking a refund of amounts paid more than three years prior. The Israels' 2000 claim seeks a refund as a result of the EIC for the tax years 1993, 1994, and 1995.

■ The Israels argue that the limitations period of § 6511(b)(2)(A) does not apply to the EIC, and that, even if it does, they filed their claim within that period. The Israels argue that the EIC is a "unique tax credit" that is not subject to the "usual rules on payment of taxes" such as § 6511(b)(2)(A). They suggest that the EIC is essentially not a tax refund, but rather "an antipoverty mechanism" through which the government subsidizes low-income families, and the fact that the subsidy is embedded in the tax code is mere happenstance. After all, the EIC

does permit taxpayers to receive more from the government than they pay in taxes. Because the EIC often acts as a "negative income tax" it appears to be analytically separable from the "payment" it purports to "refund." The Israels' view is that the EIC is simply a remittance from the government to the working poor that happens to refund taxes first. Thus, they are not seeking a refund of tax money they paid—indeed, they paid no tax in two of the years in question. And as there was no payment, there is no payment date from which to calculate the limitations period of § 6511(b)(2)(A).

However, the Code explicitly characterizes amounts refundable by operation of the EIC as "overpayments" of taxes. According to the Code, "[i]f the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 ... exceeds the tax imposed ... the amount of such excess shall be considered an overpayment." 26 U.S.C. § 6401(b)(1). As the EIC falls under subpart C of part IV of subchapter A of chapter 1, amounts represented by employing the EIC are treated as overpayments. The Code provides generally for the refund of overpayments. *See* 26 U.S.C. § 6402(a). Thus, deeming refund amounts generated by the EIC as overpayments makes sense because the EIC is a credit unlike other credits in the tax code—not only can it be used "to offset tax that would otherwise be owed," it is "refundable" even if the taxpayer had no tax liability. *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 854, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). But if it were not an overpayment, it would not be refundable. The only way to understand the EIC in

---

**2.** We noted in *Weisbart* that this construction of § 6511(a) permits a taxpayer a potentially unlimited time within which to file a late return—and an additional three years from the date of that filing in which to claim a refund. *Weisbart*, 222 F.3d at 95. However,

as the discussion below demonstrates, that potentially unlimited time to file is effectively curtailed by the "look back" provision of § 6511(b)(2)(A), which limits a claim for a refund to amounts paid within three years prior to the claim.

the context of the tax code, then, is as a constructive overpayment.

■ In addition, the Supreme Court has clearly held that amounts represented by the EIC are "overpayments" of taxes for purposes of placing them within Code provisions relating to tax refunds. *See Sorenson,* 475 U.S. at 859–66, 106 S.Ct. 1600. In *Sorenson,* the taxpayers sought to prevent the government from intercepting a refund generated by the EIC to satisfy an overdue child support obligation. The Code provides that the "amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support." § 6402(c). The taxpayers conceded that amounts refundable by operation of the EIC are "overpayments" under § 6402(a), the provision providing for refunds, but also argued that such amounts are *not* overpayments under § 6402(c), the provision establishing child-support intercept. *Sorenson,* 475 U.S. at 859–60, 106 S.Ct. 1600. The Court rejected this argument, noting that "identical words used in different parts of the same act are intended to have the same meaning." *Id.* at 860, 106 S.Ct. 1600 (quotation marks and citation omitted). It held that the refund generated by the EIC was subject to "interception" because the amount being refunded was an "overpayment" under § 6402(c). *Id.* at 859, 106 S.Ct. 1600.

The Israels offer an argument similar to that pressed by the *Sorenson* taxpayers. The Israels suggest that although amounts represented by the EIC are "overpayments" of tax under § 6401(b)(1), those amounts are not "tax[es] paid" under § 6511(b)(2)(A). The terms are not identical, but it seems reasonable to conclude that the payment of tax referred to in each section is the *same* payment of tax. Thus, although the Israels present an interesting argument that the EIC is only incidentally

related to the refund of taxes, the Code and the Supreme Court disagree. *See* § 6401(b)(1); *Sorenson,* 475 U.S. at 859, 106 S.Ct. 1600. Thus, the "look-back" rule of § 6511(b)(2)(A) precludes refunds of EIC "overpayments" made more than three years prior to filing a claim.

As refunds generated by the EIC are refunds of tax overpayments subject to the limitations period of § 6511(b)(2)(A), the issue arises as to when to deem those overpayments *paid.* The Israels contend that they should be deemed to have "paid" the amount represented by the EIC on the date they filed their claims, and thus that the limitations period of § 6511(b)(2)(A) does not bar their refund. They argue that because the IRS cannot issue the EIC to a taxpayer until that taxpayer files the requisite return, the credit "cannot be paid" until that time. However, the Israels have confused the issue. At issue is when the Israels should be deemed to have paid the amount that they now seek refunded—not when the government could have first paid them the refund. The latter is irrelevant to the former. Part of the confusion over this issue may be due to the difficulty of characterizing the EIC. The Israels cast the issue as being about when the "earned income credit was paid." But a tax credit is not "paid" as such. Rather, it is an amount that offsets tax liability, and sometimes, as in the case of the EIC, generates a refund in excess of that tax liability. The issue, then, is about when the amount sought to be refunded by operation of the EIC was actually or constructively paid.

■ In support of their position, the Israels place great emphasis on the fact that taxation statutes are to be interpreted in favor of the taxpayer and against the government. *See* Sutherland, Stat. Const. § 66.01. While this rule of statutory interpretation *does* indeed constrain our discre-

tion, it does not prevent us from following the precedent set forth in *Sorenson* and does not require us to adopt interpretations of the tax code that are objectively unreasonable. Here the taxpayer indeed asks us to adopt a position that is contrary to Supreme Court precedent and to numerous tax-policy considerations. For the reasons that follow, not even the taxpayer-friendly standard of review can allow us to agree with the taxpayer under these circumstances.

The government contends that the Israels' EIC "overpayments" occurred more than three years prior to their February 2000 filing—therefore, § 6511(b)(2)(A) precludes them from receiving a refund of that amount. According to 26 U.S.C. § 6513(b), withholding taxes are deemed paid on April 15 of the year following the tax year in question. *See* 26 U.S.C § 6513(b)(1). The government argues that the district court properly held that § 6513(b) applies to amounts sought to be refunded by operation of the EIC, and that the Israels are deemed to have paid those amounts—in part actually and in part constructively—on April 15 of 1994, 1995, and 1996. Because these pay-dates are more than three years prior to February 2000, § 6511(b)(2)(A) precludes the Israels from receiving their "refund." The government acknowledges that there appears to be no appellate authority on the question of whether the "deemed paid" rule of § 6513(b) applies to the EIC, but notes that a number of trial courts have reached the same conclusion as the district court below—that the amount represented by the EIC is deemed paid on April 15 of the year following the tax year in question. *See, e.g., Harriman v. I.R.S.*, 233 F.Supp.2d 451, 459 (E.D.N.Y.2002); *Smith*

*v. Comm'r*, 2000 WL 300488 (D.Or. Feb.8, 2000); *Little v. Comm'r*, T.C. Memo.1995–1, 1995 WL 1504 (1995).

We agree with the government that amounts refundable by operation of the EIC are deemed paid as of the filing deadline for the tax year in question. By its terms § 6513(b) clearly applies to at least part of the Israels' claim for a refund. In 1993, the Israels had approximately $140 in taxes *withheld* from their income. Thus, they are deemed to have paid that amount on April 15, 1994. § 6513(b)(1). As they "paid" that amount more than three years prior to filing their claim for a refund, the "look back" period of § 6511(b)(2)(A) precludes them from receiving it. The question arises whether § 6513(b) similarly applies to those amounts the Israels seek refunded that they did not, in fact, *pay* in the first instance. We hold that it does.

Indeed, a logical and consistent reading of the Code demands this conclusion. Suppose a taxpayer has $1000 in taxes withheld from his pay in 1993 and does not file a return for that year until 2003. In that return, he claims a refund of those taxes based on the fact that he was eligible for the EIC in 1993. In that case, § 6511(b)(2)(A) would seem without question to preclude the refund. Section 6513(b)(1) deems the $1000 withheld in 1993 as paid on April 15, 1994—far outside the "look back" period. Why, then, should the result be any different here? It cannot be because the Israels earned so little that they actually paid less than they seek refunded. Surely the statute does not have two different meanings depending on the financial status of the taxpayer.[3]

---

**3.** We note that the facts of this hypothetical are *not* so different than the facts in our case. The Israels *did* pay some tax in 1993. Thus, were we to conclude that § 6511(b)(2)(A) per-

mitted a refund of amounts generated by the EIC only where the taxpayer initially paid no taxes, we would have to conclude that one of the Israels' claims was partially precluded,

Finally, the "look back" rule embedded in § 6511(b)(2)(A)—and triggered in this case by § 6513(b)—seeks to prevent taxpayers from asserting stale claims for credits or refunds. In *Weisbart,* we began our analysis of § 6511(b)(2)(A) by noting that "[t]he Tax Code was obviously not set up to indulge the dilatory." *Weisbart,* 222 F.3d at 96. A claim for the EIC requires a taxpayer to demonstrate a host of facts about his or her income and dependent children. *See* § 32(a)-(c). Verifying this information many years after the fact may be difficult. Thus, it is no great leap to suppose that Congress's intention to preclude dilatory taxpayers from asserting stale claims extends to claims for the EIC.

## III. Conclusion

We conclude that just as § 6513(b)(1) deems amounts actually withheld as paid on April 15 of the year following the tax year in question, it deems amounts sought to be refunded by operation of the EIC so paid. That the latter are sometimes constructively rather than actually withheld does not alter the result; amounts refundable by operation of the EIC are sufficiently "similar to excess withholding taxes" to justify similar treatment. *Sorenson v. Secretary of Treasury,* 752 F.2d 1433, 1443 n. 1 (9th Cir.1985), *aff'd,* 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). This conclusion both promotes consistency in reading the Code's provisions dealing with the payment of taxes and refunds generally and effects Congress's intention of preventing untold numbers of claims for credits and refunds many years after the fact. Thus, because amounts refundable by operation of the EIC are deemed paid on April 15 of the year following the tax year in question, the Israels' claims for the EIC were untimely as a matter of law.

while the others were timely. We find little

We therefore affirm the district court's ruling.

sense in such a distinction.